Brian K. Condon (BC 4683)
Condon & Associates, PLLC
55 Old Turnpike Road, Suite 502
Nanuet, New York 10954
(845) 627-8500 Telephone
(845) 627-8501 Facsimile
*Attorneys for Plaintiff, Martin Kessman*



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MARTIN KESSMAN,

                Plaintiff,

   -against-

WHITE CASTLE MANAGEMENT CO. d/b/a
WHITE CASTLE SYSTEM, INC.,

                Defendant.
------------------------------------------------------------------X

Civil Action No.

**COMPLAINT
AND JURY DEMAND**

'11 CIV 6242

JUDGE BRICCETTI

Martin Kessman, by his attorneys, Condon & Associates, PLLC, as and for his Complaint against the Defendant, alleges as follows:

### NATURE OF ACTION

1. This actions is commenced by the Plaintiff to redress violations of his civil rights - as protected by the United States and New York State Constitutions - and those rights conferred under the Americans with Disabilities Act of 1990 (hereinafter "ADA") caused by the Defendant's discriminatory conduct.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983, which confer original jurisdiction on federal district courts in suits to redress the deprivation of rights, privileges, and immunities secured by the laws and the Constitution of the United States, particularly the Fourteenth Amendment to the Constitution of the United States.

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the actions complained of herein occurred in this District.

## THE PARTIES

4.      Plaintiff, Martin Kessman, is a citizen of the United States residing at 28 North De Baun Avenue, Unit 302, Suffern, New York 10901.

5.      The Defendant, White Castle Management Co. d/b/a White Castle System, Inc. at all times hereinafter mentioned is a foreign corporation incorporated in the State of Delaware with its corporate offices at 555 West Goodale Street, Columbus, Ohio 43215.

## BACKGROUND

6.      Plaintiff has been a patron of Defendant's restaurants since Septmeber 1959, having attended Junior High School around the corner from a White Castle restaurant in the Bronx, New York.

7.      Over the years, Plaintiff continued to visit Defendant's restaurants in the New York and New Jersey area.

8.      Now, in his sixties, Plaintiff and his wife find Defendant's restaurants to be a convenient, quick venue to eat dinner or take out dinner before heading out for the evening.

9.      On or about April 20, 2009, Plaintiff went to the White Castle in Nanuet, New York ("Nanuet White Castle") to have a meal before he was scheduled to meet with a client.

10.     After paying for his meal, Plaintiff decided to sit down to eat his meal at the restaurant. However, to his chagrin, Plaintiff was unable to fit into the booth-style seating, which was extremely embarrassing for Plaintiff to have to experience in front of a restaurant full of customers.

11. Looking around the restaurant for another location to sit, Plaintiff quickly realized that there was no seating that would be able to accommodate his six (6) foot, two hundred ninety (290) pound frame.

12. Plaintiff has never encountered such an inconvenience due to his stature, especially when it comes to available seating in public accommodations.

13. After this incident on or about April 20, 2009, Plaintiff immediately mailed Defendant's corporate contacts expressing his frustration and concern with Defendant's lack of seating to accommodate individuals of his size. A copy of Plaintiff's letter is annexed hereto as Exhibit "A".

14. Thereafter, Plaintiff was stunned to have received three patronizing responses in letter form, two from Elizabeth Ingram, Vice President of Restaurant Operations for Defendant, and one from Maxine Rowson, District Supervisor for Defendant.

15. In the first letter received by Plaintiff on or about April 24, 2009, it was clear that this letter was a boilerplate letter, thanking Plaintiff for his "positive feedback" and "interest in White Castle." A copy of Ms. Ingram's first letter is annexed hereto as Exhibit "B".

16. On or about April 24, 2009, the same date on which Ms. Ingram dated her first letter, Plaintiff received another letter from Ms. Ingram. A copy of Ms. Ingram's second letter is annexed hereto as Exhibit "C".

17. This time, Ms. Ingram attempted to address the issue of spacing between the seats and tables in Defendant's booths and cluster seating. In this letter, Ms. Ingram indicated which restaurants had already been upgraded to the new standards, yet could not set forth a specific time by which the Nanuet White Castle would be receiving the same kinds of upgrades.

18.     On or about April 29, 2009, Plaintiff received a letter from Maxine Rowson, the District Supervisor for the Regional Office, and therefore, upon information and belief, oversees the Nanuet White Castle. A copy of Ms. Rowson's letter is annexed hereto as Exhibit **"D"**.

19.     Plaintiff, as per Ms. Rowson's instructions, attempted to contact her at the Regional Office telephone number she provided in her letter and left a message for Ms. Rowson to return his telephone call. However, Plaintiff never received a return phone call from Ms. Rowson.

20.     At this point, Plaintiff was very disappointed with the lack of attention to his problem with the seating arrangements, a problem that many other consumers and patrons may face on a daily basis as well. For this reason, Plaintiff refused to set foot in a White Castle restaurant, and any subsequent trips to the store were made by his wife.

21.     On or about December 2009, Plaintiff was attending a lodge meeting in an adjoining town to Nanuet, and Plaintiff's friends decided that they wanted to stop into the Nanuet White Castle for a quick bite before the meeting began.

22.     Plaintiff, rather than explain his embarrassing experience, which occurred eight (8) months prior, to his friends, joined his friends to the Nanuet White Castle. Upon entering the store, he noticed that absolutely no improvements or upgrades were made to the premises.

23.     When his friends suggested to sit at one of the larger tables, Plaintiff tried to squeeze himself into the booth. While doing so, Plaintiff unavoidably slammed his knee into one of the metal posts under the table, causing great pain to himself and adding insult to injury.

24.     Plaintiff was so embarrassed that he has not returned to the Nanuet White Castle since that incident.

4

25. Based upon the foregoing facts, the Defendant has violated and interfered with the Plaintiff's rights under the laws of the United States, specifically under Title III of the ADA.

## AS AND FOR A FIRST CAUSE OF ACTION
(Discrimination under Title III of the Americans with Disabilities Act of 1990)

26. Plaintiff repeats, reiterates, and realleges each and every allegation contained within paragraphs "1" through "25" as if fully set forth herein.

27. According to the ADA, "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

28. In order to state a claim for discrimination under the ADA, a plaintiff must allege that (1) he has a disability as defined by the ADA, (2) that a person who owns, leases (or leases to), or operates a place of public accommodation discriminated against him, (3) on the basis of his disability. 42 U.S.C. §§ 12182(a) & (b).

29. According to the ADA, a disability is defined as "a physical or mental impairment that *substantially limits* one or more of the major life activities of such individual...or being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A).

30. Congress's intention with the enactment of this act was to protect those individuals with disabilities who continually encounter discrimination in various forms. Here, the ADA seeks to protect Plaintiff and individuals, similarly situated as he, from the failure of Defendant to make modifications to existing restaurant facilities in order to accommodate all of its patrons.

31. Plaintiff, under the definitions put forth in the ADA, is being regarded as having such an impairment, where it is clear that Plaintiff has been subjected to an action prohibited under the ADA because of an actual or perceived physical impairment whether or not the impairment limits or is perceived to limit a major life activity. 42 U.S.C. § 12102(3)(A).

32. Defendant's failure to provide appropriate accommodations for individuals of Plaintiff's stature is clearly discriminatory, as Plaintiff is unable to comfortably find seating at the Nanuet White Castle. *See* 42 U.S.C. §§ 12182(a)(2)(A)(ii) & (iii).

33. As can be inferred from Ms. Ingram's letter, Defendant has the ability and plans for upgraded specifications to be introduced into the Nanuet restaurant; however, no efforts have been made to make any improvements, and therefore, Defendant continues to discriminate against Plaintiff on the basis of his disability in violation of the ADA.

34. Plaintiff has no adequate remedy at law for the harm and damage caused by the actions of the Defendants.

35. The Defendant's actions have caused the Plaintiff to suffer harm, damages, and injury.

**AS AND FOR A SECOND CAUSE OF ACTION**
(Equal Protection Clause - United States Constitution Fourteenth Amendment
(42 U.S.C. § 1983))

36. Plaintiff repeats, reiterates, and realleges each and every allegation contained within paragraphs "1" and "35" as if fully set forth herein.

37. Defendant's actions deprived the Plaintiff of his right to equal protection of the laws, as secured by the Fourteenth Amendment, by and among other things, failing to provide adequate seating accommodations for Plaintiff and those similarly situated to Plaintiff in the Nanuet White Castle.

38. Plaintiff has no adequate remedy at law for the harm and damage caused by the actions of the Defendants.

39. The Defendant's actions have caused the Plaintiff to suffer harm, damages, and injury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that the Court:

1. On the First and Second Causes of Action, enter Judgment in an amount to be determined at trial.

2. Order that the Defendant be required to pay the costs incurred by the Plaintiff in connection with this action, including all court costs, expenses, and reasonable attorneys fees incurred in connection with this action.

3. That the Plaintiff have such other and further relief that the Court deems necessary and proper.

## JURY DEMAND

Trial by jury is hereby demanded as to all counts and allegations so demandable.

Dated: Nanuet, New York
August 23, 2011

Yours, etc.

CONDON & ASSOCIATES, PLLC

By: /s/ Brian K. Condon
Brian K. Condon (BC 4683)
*Attorney for Plaintiff*
55 Old Turnpike Road, Suite 502
Nanuet, New York 10954
(845) 627-8500 (telephone)
(845) 627-8507 (facsimile)
brian@condonlawoffices.com

LETTER TO WHITE CASTLE

28 North DeBaun Avenue
Unit 302
Suffern, New York 10901
December 14, 2009

Elizabeth Ingram
Vice President, Restaurant Operations
White Castle System, Inc.
P.O. Box 1498
Columbus, OH 43216-1498

Dear Ms. Ingram:

I have been a customer of White Castle since September of 1959. I went to Junior High School on Lorillard Place and Fordham Road in the Bronx, New York and White Castle was located right on the corner, ½ block from the school. At that time, I could have qualified for "frequent flyer miles" if they gave them for that type of endeavor. My association with White Castle has endured over the years at many different locations in the New York and New Jersey areas. I am now sixty-two years of age and reside with my wife in Rockland County, as do my children and grandchildren. I have done well enough in business to go to virtually any restaurant I choose, but my wife and I often like to run into a fast food restaurant for a quick bite on the way to the movies or another venue.

On approximately April 20, 2009 I stopped into the White Castle in Nanuet, New York to have a fast meal before I went to see a client and ordered my traditional #2 combination. I got my meal and went to sit down; I could not slide into the booth-style seating that was there -- that was embarrassing enough as there were a lot of people looking at my predicament. As I looked around the restaurant, I saw that there were no tables and chairs that could accommodate a person that merely wanted to sit down and eat his meal. I am 6 Feet and weigh 290 pounds -- I played football, fly on regular airlines and attend Yankee and Met games! There are many fast food establishments within a two-mile area from the White Castle in Nanuet -- they are McDonalds, Burger King and Wendy's to name a few and each of these establishments provides free-style seating where a plus-size person can sit down and enjoy his meal without fear of public humiliation or discomfort. After this experience, I immediately e-mailed corporate and received three patronizing responses -- two were from the corporate office signed by Elizabeth Ingram allegedly and one was from Maxine Rowson, the District Supervisor. I returned Maxine Rowson's call as instructed, but never heard from her. The corporate letters had the nerve to send me a list of White Castles nationwide so I could see which ones had been renovated up to scale. What a joke!!!! Furthermore, to smoothe things over, in each letter was a coupon for three free hamburgers -- but cheese was extra!! How nice can you be? My wife went and picked up the burgers -- she paid the surcharge for the cheese and brought them home for us to share, because I did not want to set foot into the

store. Any subsequent trips to the store have been made by my wife – I have been like an outcast.

      Well, the months went by and all of a sudden we reached December, 2009, eight months after my earlier encounter. Some friends and I were going to a lodge meeting in an adjoining town which began at 7:00 P.M. so THEY (not I) decided to go to White Castle to get some burgers and fries. I decided to shut my mouth because I did not want to be embarrassed in front of my friends, who could be quite hurtful in a comical way. When we got to the store, the first thing I did was to look around – of course, no alteration to the premise was done. There probably was enough room to add a couple of free-standing tables to accommodate my problem, but nobody at corporate obviously dealt with the concern. We took a larger table – the first thing I did when I tried to squeeze my body in was to slam my knee into the metal posts under the table, causing great pain. This added insult to injury. I feel that this is a direct violation of my rights and I will seek redress.



**SYSTEM, INC.**

April 24, 2009

Martin Kessman
28 N De Baun Avenue, Apartment 302
Suffern, NY 10901

Dear Martin Kessman:

Thank you for your recent comments regarding the products and service you have received at our restaurants directed to our corporate office. We always enjoy hearing from customers who enjoy White Castle and its products, especially when they can give us positive feedback. We know your time is limited and your schedule is busy, and so we truly appreciate customers like you, who take the time to let us know when we have done something right. To receive promotional information periodically, please go to our website and sign up for our email list.

Thank you again for your interest in White Castle.

Sincerely,

*Elizabeth Ingram*

Elizabeth Ingram

Re:  4607192



**White Castle**

**SYSTEM, INC.**

April 24, 2009

Martin Kessman
28 N De Baun Ave., Apt. 302
Suffern, NY 10901-5129

Dear Mr. Kessman:

Thank you for your recent inquiry directed to the corporate office regarding increasing the spacing between our seats and tables in our booths and cluster seating. I am happy to inform you that this issue has been addressed with our new interior décor and seating plans in our newest locations and remodels. We have increased the space between the booth seating and tables by 6" – 90% more room than the rest of the QSR industry and have added tables with free standing chairs instead of just cluster seating in our restaurants.

Please find enclosed a copy of our current restaurant list. Although, it may be awhile before your local White Castle receives its new interior remodel, those locations built in last couple years have all received some modifications to the floor plan which should answer your need. You may also wish to contact the Regional office for further information regarding our seating plans at different locations. Please feel free to contact us again once you have visited one of these locations, and tell us your opinion of our new décor and seating.

Thank you again for your interest in White Castle. We appreciate your past patronage and hope that you will visit us again.

Sincerely,

*Elizabeth Ingram*

Elizabeth Ingram
Vice President, Restaurant Operations

Enclosures



SYSTEM, INC.

29-Apr-09

Martin Kessman
28 N DeBaun Avenue Apt 302
Suffern, New York 10901-5129

Dear Mr.(s)   Martin Kessman

We are in receipt of your recent comments concerning a visit to one of our White Castle units. I would very much like to discuss this matter with you and would appreciate it if you would contact me at the White Castle Regional Office, 718-899-8404, at your earliest convenience. If I am unavailable the staff will be able to reach me and I shall return your call immediately.

Thanking you in advance, I remain

Sincerely yours,

*Maxine Rowson*

Maxine Rowson
District Supervisor

NEW YORK AREA OFFICE • 69-01 34TH AVENUE • WOODSIDE, LONG ISLAND, NEW YORK 11377-2231 • 718/899-8404 • FAX 718/457-2278
*Our quest is excellence and standard setting leadership in each of our industries.*